Bruce H. Rabinovitz, Esq. – *Pro Hac Vice*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C.  20006
Telephone: (202) 663-6960
Facsimile:  (202) 663-6363
E-mail:  bruce.rabinovitz@wilmerhale.com

Paul M. Winke, Esq. – *Pro Hac Vice*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
399 Park Avenue
New York, NY 10022
Tel. (212) 230-8808
Fax. (212) 230-8888
E-mail: paul.winke@wilmerhale.com

Richard G. Grotch, Esq. – SBN 127713
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, California  94065-2133
Telephone: (650) 592-5400
Facsimile:  (650) 592-5027
E-mail:  rgrotch@chdlawyers.com

**ATTORNEYS FOR** Defendant
UNITED AIR LINES, INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED AIRLINES, INC., <br><br> Defendants., | Case No.   C 10-4816 WHA <br><br> NOTICE OF MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISSS <br><br> Date:          February 3, 2011 <br> Time:          8:00 a.m. <br> Courtroom:   9 – 19th Floor |

TO PLAINTIFFS NATIONAL FEDERATION OF THE BLIND, MICHAEL MAY, MICHAEL HINGSON, and CHRISTINA THOMAS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 3, 2011, at 8:00 a.m., in Courtroom 9 of the above entitled Court, located at 450 Golden Gate Avenue, Nineteenth Floor, San Francisco, California, defendant UNITED AIR LINES, INC. (erroneously sued herein as "United Airlines, Inc.") (hereinafter referred to as "United") will move the Court for an order dismissing plaintiffs' Complaint filed on October 25, 2010, with prejudice.

United's motion will be made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and on the grounds that plaintiffs have failed to state, and cannot state, claims against United upon which relief may be granted because each of plaintiffs' claims is independently preempted by both the Air Carrier Access Act of 1986, 49 U.S.C. § 41705 *et seq.* and the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b), and because Plaintiffs' Complaint does not allege a violation of either the Unruh Civil Rights Act, Cal. Civ. Code § 51, or the California Disabled Persons Act, Cal. Civ. Code § 54.

United's motion will be based upon this notice, the following memorandum of points and authorities, plaintiffs' Complaint, the complete files and records in this action and such other and further memoranda as United may file in support of its motion.

Dated:  December 27, 2010                    CODDINGTON, HICKS & DANFORTH


                                             /s/  *Richard G. Grotch*
                                          By:_____
                                             Richard G. Grotch
                                             Attorney for Defendant
                                             United Air Lines, Inc.

**TABLE OF CONTENTS**

I.      INTRODUCTION ………………………….……………………………… ……... 1

II.     PLAINTIFFS' ALLEGATIONS ………………………………………………… 2

III.    ARGUMENT ………………………………………………………………….. 3

        A.     Plaintiffs' Claims Are Field Preempted by the ACAA ………………………… 4

        B.     Plaintiffs' Claims Are Also Conflict Preempted by the ACAA…………………… 6

        C.     Plaintiffs' Claims Are Also Preempted by the Airline Deregulation Act…………. 7

               1.     The Supreme Court's Interpretation of "Services" in *Rowe* Overrules
                      the Ninth Circuit's *Charas* Interpretation…………………………………..8

               2.     Notwithstanding *Charas*, Plaintiffs' Statutory Claims Seeking
                      to Regulate United's Kiosks Are Expressly Preempted……………………..9

        D.     Plaintiffs' Complaint Does Not Allege that United's Automated
               Kiosks Violate Either the Unruh Act or the DPA…………………………………..11

IV.     CONCLUSION ……………………………………………………………… 15

# TABLE OF AUTHORITIES

## CASES

*Air Transport Association of America v. City & County of San Francisco*,
    266 F.3d 1064 (9th Cir. 2001)............................................................................... 10

*Air Transport Association of America v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008)..................................................................................... 8

*Aloha Islandair, Inc. v. Tseu*,
    128 F.3d 1301 (9th Cir. 1997)................................................................................ 10

*American Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995) .......................................................................................... 7, 10

*Branche v. Airtran Airways, Inc.*,
    342 F.3d 1248 (11th Cir. 2003) ........................................................................... 8, 9

*Butler v. Adoption Media, LLC*,
    486 F. Supp. 2d 1022 (N.D. Cal. 2007) ................................................................ 13

*Charas v. Trans World Airlines, Inc.*,
    160 F.3d 1259 (9th Cir. 1998) .......................................................................... 8-11

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ............................................................................................... 4

*Coronado v. Cobblestone Village Community Rentals*,
    163 Cal. App. 4th 831, 77 Cal. Rptr. 3d 883 (2008), *overruled on other
    grounds by Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 678, 208 P.3d 623, 634
    (2009) ............................................................................................................. 12, 13

*Doe v. Saenz*,
    140 Cal. App. 4th 960, 45 Cal. Rptr. 3d 126 (2006) ............................................ 14

*Geier v. American Honda Motor Co., Inc.*,
    529 U.S. 861 (2000) ............................................................................................... 7

*Hanni v. American Airlines, Inc.*,
    No. C 08-0732 CW, 2008 WL 1885794 (N.D. Cal. Apr. 25, 2008)........................ 9

*Harris v. Capital Growth Investors XIV*,
    52 Cal. 3d 1142, 805 P.2d 873, 278 Cal Rptr. 615 (1991) .................................. 13

*Hodges v. Delta Airlines, Inc.*,
    44 F.3d 334 (5th Cir. 1995) ................................................................................... 9

*Johnson v. Northwest Airlines, Inc.*,
No. C-08-2272 VRW, Order (N.D. Cal. May 5, 2010) ............................................................ 6

*Kerner v. Mendez,*
No. C 08-4528 EDL, 2009 WL 1226998 (N.D. Cal. May 1, 2009) ...................................... 13

*Marsh v. Edwards Theatres Circuit, Inc.,*
64 Cal. App. 3d 881, 134 Cal. Rptr. 844 (1976), *superseded by statute on*
*other grounds as recognized in Donald v. Sacramento Valley Bank,*
209 Cal. App. 3d 1183, 260 Cal. Rptr. 49 (1989) ........................................................ 12-13

*Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*,
555 F.3d 806 (9th Cir. 2009) .................................................................................... 3, 4

*Montalvo v. Spirit Airlines, Inc.,*
508 F.3d 464 (9th Cir. 2007) ...................................................................................... 4, 7

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) .......................................................................................... 7, 9, 10

*Newman v. American Airlines, Inc.,*
176 F.3d 1128 (9th Cir. 1999) ........................................................................................ 10

*Northwest Airlines, Inc. v. Minnesota*,
322 U.S. 292 (1944) ................................................................................................... 3

*O.W.L. Foundation v. City of Rohnert Park*,
168 Cal. App. 4th 568, 86 Cal. Rptr. 3d 1 (2008) ............................................................ 14

*Onoh v. Northwest Airlines, Inc*.,
613 F.3d 596 (5th Cir. 2010) ............................................................................................ 8

*R.J. Reynolds Tobacco Co. v. Durham County*,
479 U.S. 130 (1986) ....................................................................................................... 4

*Rowe v. New Hampshire Motor Transport Association,*
552 U.S. 364 (2008) .................................................................................................... 7-9

*Russell v. Skywest Airlines, Inc.,*
No. C 10-0450 MEJ, 2010 WL 2867123 (N.D. Cal. Aug. 11, 2010) ...................................... 6

*Shaw v. Delta Air Lines, Inc*.,
463 U.S. 85 (1983) ........................................................................................................ 7

*Seymour v. Continental Airlines, Inc.,*
        No. 09-526 ML, 2010 WL 3894027 (D.R.I. June 11, 2010), *Report and Recommendation adopted by*, 2010 WL 3894023 (D.R.I. Oct. 4, 2010) ................................ 8

*Smith v. Comair, Inc.,*
        134 F.3d 254 (4th Cir. 1998) ................................................................. 8, 9

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,*
        73 F.3d 1423 (7th Cir. 1996) ................................................................. 8, 9

**STATUTES, CODES, RULES & REGULATIONS**

14 C.F.R. § 382.1 ................................................................................................. 4

14 C.F.R. § 382.3 ................................................................................................. 6

14 C.F.R. § 382.53 ............................................................................................... 5, 6

14 C.F.R. § 382.57 ............................................................................................... 5

14 C.F.R. § 382.91 ............................................................................................... 6

14 C.F.R. § 382.95(a) .......................................................................................... 6

42 U.S.C. § 12141(2) ........................................................................................... 13

42 U.S.C. § 12181(10) ......................................................................................... 3, 4

49 U.S.C. § 41705(a) ........................................................................................... 4

49 U.S.C. § 41713(b)(1) ...................................................................................... 4

Cal. Civ. Code § 51 .............................................................................................. 11

Cal. Civ. Code § 51(d) ......................................................................................... 12

Cal. Civ. Code § 54.1(a)(1) .................................................................................. 11

Cal. Civ. Code § 54.9 ........................................................................................... 14

**OTHER AUTHORITIES**

2006 Cal. Legis. Serv. Ch. 546 (A.B. 768) (Sept. 28, 2006) ............................. 14

California Bill Analysis, 768 Sen. (June 20, 2006) ........................................... 14

California Bill Analysis, A.B. 768 Assem. (Aug. 16, 2006) .............................. 14

California Department of Justice, Legal Rights of Persons with Disabilities (rev. Apr. 2006),
available at http://ag.ca.gov/consumers/pdf/disabled.pdf ................................................................. 12

Nondiscrimination on the Basis of Disability in Air Travel, 73 Fed. Reg. 27614
(May 13, 2008) ................................................................................................................................ 5

Nondiscrimination on the Basis of Handicap in Air Travel, 55 Fed. Reg. 8008
(Mar. 6, 1990) ................................................................................................................................ 3

Report on DOT Significant Rulemakings, November 2010, #71, available at
http://regs.dot.gov/rulemakings/201011/report.htm#71 .......................................................... 5

# I.     INTRODUCTION

Defendant United Air Lines, Inc. ("United") moves the Court to dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that they are preempted by both the Air Carrier Access Act of 1986 (the "ACAA") and the Airline Deregulation Act of 1978 (the "Airline Deregulation Act"), and because they fail to state a cause of action for which relief can be granted under either California's Unruh Civil Rights Act (the "Unruh Act") or the State's Disabled Persons Act (the "DPA").

Federal law expressly requires United to provide ticketing, boarding pass, upgrade, frequent-flyer, baggage-handling, and related services to its blind passengers on a nondiscriminatory basis. United does so, both to comply with the law and to serve its passengers and its own business interest, and Plaintiffs do not seriously contend that United discriminates with respect to any of these services. Plaintiffs' claim is, rather, that blind passengers are entitled to equal access to one means United uses to provide those services --  automated kiosks -- and that if United is going to provide this technology to anyone, it must make the technology equally accessible to the blind even if United uses other means to provide equal or superior airline services to the blind.

Federal law preempts Plaintiffs' claims in two independent respects.  First, those claims are foreclosed (under principles of both field and conflict preemption) by the ACAA and the implementing regulations of the U.S. Department of Transportation ("US DOT").  Under the ACAA, blind passengers are entitled to equal and nondiscriminatory treatment, but they are not invariably entitled to *identical* treatment.  The ACAA occupies the field of nondiscrimination against disabled passengers in all relevant aspects of commercial air travel, and regulations adopted thereunder by the US DOT deal expressly with automated kiosks and require carriers to provide equivalent service to customers unable to use them.  In addition, the US DOT considered and rejected imposing on airlines

the very standard that Plaintiffs seek to impose here through state law. Principles of conflict preemption thus foreclose any state law disagreement with that federal policy choice.

*Second*, the Airline Deregulation Act expressly preempts state regulation of airline services. Although the Ninth Circuit has read the phrase "services of an air carrier" narrowly in the context of common law tort claims, the Supreme Court has since made clear that the word covers a broad field that plainly includes ticketing passengers, issuing boarding passes, providing upgrades to first and business classes, baggage handling and all related services.

Application of these preemption principles is essential to the sound administration of this uniform federal scheme. California is one of fifty States. If it could adopt its own rules governing how passengers obtain tickets and seats, check baggage and board airplanes, then every other State could do so. The resulting patchwork quilt of inconsistent state-by-state requirements would undermine the longstanding role of federal regulation in this area, which has always ensured nationally uniform rules governing the relationship between airlines and their passengers with respect to air travel.

In any event, even apart from federal preemption, California law does not require Plaintiffs' requested relief in the first place. Although both the Unruh Act and the DPA protect against numerous forms of discrimination, neither law requires United to modify or replace its kiosks to make them accessible to blind passengers. Accordingly, Plaintiffs' claims should be dismissed on this independent state ground as well.

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs are three blind individuals and the National Federation of the Blind ("NFB"). Compl. ¶¶ 6-9. They bring this class action on behalf of an asserted "Kiosk Class," alleging that defendant United Airlines has violated California statutes because United has deployed "automated ticketing kiosks ('Kiosks') in California airports that are inaccessible to blind customers." *Id.* ¶ 1.

Plaintiffs allege that they have been subject to discrimination in violation of the Unruh Act, and have been denied equal access to United's kiosks in violation of the DPA, because of their disability.  *Id*. ¶¶ 34, 41.

The kiosks are "automated machines, most often located in airport terminals and concourses, and are owned, operated, and controlled by airlines such as United." *Id.* ¶ 19.  "United's sighted customers may use a United Kiosk to access information about flights, check in for flights, print tickets and boarding passes, select seats, upgrade to its business or first class cabins, check baggage, and perform other transactions relevant to their air travel plans." *Id.* ¶ 20.  Plaintiffs allege that the kiosks "are inaccessible to blind individuals because the machines use exclusively visual computer screen prompts and touch-screen navigation to guide a customer through a transaction without translating the prompts into a medium accessible to the blind, such as audio output." *Id.* ¶ 21.  According to Plaintiffs, United is "aware of means by which its Kiosks could be made accessible" but has nevertheless "refused to make its Kiosks accessible or to purchase accessible Kiosks."  Id. ¶ 25.

### III.    ARGUMENT

Interstate commercial air transportation operates "under an intricate system of federal commands."  *Martin ex rel. Heckman v. Midwest Express Holdings, Inc*., 555 F.3d 806, 809 (9th Cir. 2009) (quoting *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303 (1944) (Jackson, J., concurring))  This "system of federal commands," *inter alia*, expressly prohibits discrimination "[i]n [access to] air transportation," ACAA, 49 U.S.C. § 41705(a), including discrimination based on disability.  The US DOT has implemented the statute with "a detailed, comprehensive, national regulation, based on [the ACAA], that substantially, if not completely, occupies the field of nondiscrimination on the basis of handicap in air travel."  *Nondiscrimination on the Basis of Handicap in Air Travel,* 55 Fed. Reg. 8008, 8014 (Mar. 6, 1990).  The system of federal commands also expressly prohibits any State from "enact[ing] or enforc[ing] a law, regulation, or other provision

having the force and effect of law related to a price, route, or service of an air carrier."  Airline

Deregulation Act, 49 U.S.C. § 41713(b)(1).  As demonstrated below, each statute independently

preempts Plaintiffs' claims because they purport to enforce California statutory standards in fields

blanketed by federal law.

**A.      Plaintiffs' Claims Are Field Preempted by the ACAA**

The ACAA prohibits discrimination by air carriers "[i]in providing air transportation."  49

U.S.C. § 41705(a).   Because the ACAA and its implementing regulations occupy the field of

disability discrimination in air travel, the US DOT has declared that "interested parties should be on

notice that there is a strong likelihood that state action on matters covered by this rule will be

regarded as preempted."  55 Fed. Reg. at 8014.  Because Plaintiffs' claims fall squarely within the

occupied field, they are preempted.  *See Montalvo v. Spirit Airlines, Inc.,* 508 F.3d 464, 470 (9th Cir.

2007) (state enforcement of law preempted "when federal law so thoroughly occupies a legislative

field 'as to make reasonable the inference that Congress left no room for the States to supplement

it.'") (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992)).  "[W]hen an agency

administrator promulgates pervasive regulations pursuant to his Congressional authority, we may

infer a preemptive intent unless it appears from the underlying statute or its legislative history that

Congress would not have sanctioned the preemption."  *Id*. at 471 (citing *R.J. Reynolds Tobacco Co.

v. Durham Cnty*., 479 U.S. 130, 149 (1986)); *see also Martin*, 555 F.3d at 811.

Federal regulations under the ACAA concerning access to ticketing, check-in and related services by

the visually impaired are indeed pervasive.  Their purpose is to "require[] carriers to make aircraft,

other facilities, and services accessible" and to "require[] carriers to take steps to accommodate

passengers with a disability."  14 C.F.R. § 382.1.

Moreover, US DOT regulations specifically deal with kiosks.  Carriers such as United are

required to "ensure that passengers with a disability who identify themselves as persons needing

visual or hearing assistance have prompt access to the same information provided to other passengers

at each … ticketing area … to the extent that this does not interfere with employees' safety and

security duties…"  14 C.F.R. § 382.53.  And specifically, if a carrier's

> automated kiosks in airport terminals cannot readily be used by a
> passenger with a disability for such functions as ticketing and
> obtaining boarding passes that the kiosks make available to other
> passengers, [the carrier] must provide equivalent service to the
> passenger (e.g., by assistance from your personnel in using the kiosk
> or allowing the passenger to come to the front of the line at the check-
> in counter).

14 C.F.R. § 382.57.  These regulations obviously occupy the subject area of the Complaint – access

by the visually impaired to automated kiosks in airport terminals, Compl. ¶¶ 34, 41.

Indeed, in 2008 the US DOT explicitly considered and rejected a proposal to require that

kiosks themselves be available to passengers with disabilities, deciding instead to rely on the

regulation that such passengers be given equivalent, even if different service.  *See Nondiscrimination

on the Basis of Disability in Air Travel*, 73 Fed. Reg. 27614, 27619 (May 13, 2008).  The US DOT's

notice of proposed rulemaking had "asked whether the final rule should require automated kiosks

operated by carriers in airports … (e.g., for ticketing and dispensing of boarding passes) to be

accessible, and if so, what accessibility standards should apply to them."  *Id*.  US DOT decided not to

require access to kiosks and instead addressed only "[w]hat services … carriers [must] provide *if* their

automated kiosks are inaccessible."  14 C.F.R. § 382.57 (emphasis added).  US DOT explained that it

rejected the proposal because of "questions about cost and technical issues."  73 Fed. Reg. at 27619.[1]

---

[1]   The matter has received continuing federal attention.  The US DOT also stated in 2008 that it
"plans to seek further comment about kiosks in a forthcoming supplemental notice of proposed
rulemaking."  *Id.*  It plans to issue that notice in July 2011 to "seek[] information from the public on
… whether automated kiosks operated by carriers in airports and elsewhere should be required to be
accessible" under the ACAA.  Report on DOT Significant Rulemakings, November 2010, #71,
*available at* http://regs.dot.gov/rulemakings/201011/report.htm#71.

As two courts in this District have held, the US DOT regulations on access are of "the sort contemplated by the Ninth Circuit … implying an intent by Congress to preempt state-law in this area." *Russell v. Skywest Airlines, Inc.*, No. C 10-0450 MEJ, 2010 WL 2867123, at *5 (N.D. Cal. Aug. 11, 2010) (quoting *Johnson v. Northwest Airlines, Inc.*, No. C 08-2272 VRW, *Order*, Dkt. # 157 at 13:14-17 (N.D. Cal. May 5, 2010)).  In one of those cases—*Johnson*—the plaintiff had asserted negligence based on an airline's failure to provide a wheelchair to a passenger who was unable to walk up and down stairs.  Chief Judge Walker dismissed the claim on ACAA preemption grounds, citing two regulations promulgated under the statute and holding that "there are extensive federal regulations governing the area of the claims in this case."  *Johnson*, at 13:7-14 (citing 14 C.F.R. §§ 382.91; 382.95(a)).  In the other case—*Russell*—the court dismissed as preempted the claim of a plaintiff who alleged that she was injured exiting a commuter plane, and, because she was blind in one eye, was "regarded as having … an impairment under [ACAA regulation] 14 C.F.R. § 382.3." 2010 WL 2867123, at *5.

Plaintiffs' claims are, at bottom, that California law entitles them not merely to nondiscriminatory treatment but to "use the kiosks independently."  Compl. ¶¶ 7-9.  In their view, it is the kiosks that "discriminate[] against the blind and … fail[] to provide access for persons with disabilities as required by California law."  Compl. at Prayer for Relief § A.  But if California can regulate airport check-in kiosks (and by extension every other physical apparatus or service related to getting on a commercial flight), then every other State may equally impose its own policies.  It is precisely such a 50-state patchwork that uniform federal regulation (which in this instance requires equal access to ticketing and boarding but not to every form of technology) has long since displaced.

**B.      Plaintiffs' Claims Are Also Conflict Preempted by the ACAA**

Plaintiffs' state law claims are preempted by the ACAA for the additional reason that they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress in enacting the federal law." *Montalvo*, 508 F.3d at 470 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95 (1983)); *see also Geier v. American Honda Motor Co., Inc*., 529 U.S. 861, 881-82 (2000). As noted above, in 2008, US DOT specifically declined to enact a regulation requiring the accessibility of automated kiosks, citing its "questions about cost and technical issues." 73 Fed. Reg. at 27619. In explaining its rationale, US DOT made clear that while it has as one goal "that all services available to the general public should be accessible to people with disabilities," it must also balance that objective with cost and feasibility concerns. *Id.* As interpreted by Plaintiffs, California state law would override US DOT's considered judgment with respect to its purpose and objective of requiring nondiscriminatory service while avoiding undue financial and technological burdens on air carriers. Accordingly, Plaintiffs' claims should be dismissed as conflict preempted by the ACAA.

## C.     Plaintiffs' Claims Are Also Preempted by the Airline Deregulation Act

Plaintiffs' claims are also barred by the Airline Deregulation Act, which expressly prohibits enforcement of state laws "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). That provision "express[es] a broad pre-emptive purpose," and "displace[s] all state laws that fall within its sphere, even including state laws that are consistent with [the Airline Deregulation Act's] substantive requirements." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 387 (1992) (second alteration in original); *see also American Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995) (Section 41713(b)(1) "is most sensibly read, in light of the [Airline Deregulation Act]'s overarching deregulatory purpose, to mean 'States may not seek to impose their own public policies … on the operations of an air carrier.'"). The Supreme Court recently reaffirmed the broad preemptive purpose of the same words in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008), expansively construing the term "service" in a parallel preemption provision that was modeled on Section 41713(b)(1). Here, Plaintiffs' claims are plainly "related to a … service of an air carrier" and are thus preempted.

1

2

**1. The Supreme Court's Interpretation of "Services" in *Rowe* Overrules the Ninth Circuit's *Charas* Interpretation**

3      United's provision of kiosks for use by customers "to access information about flights, check

4 in for flights, print tickets and boarding passes, select seats, upgrade to its business or first class

5 cabins, check baggage, and perform other transactions relevant to their air travel plans," Compl. ¶ 20,

6 fits easily within the broad meaning of "service" as used in the Airline Deregulation Act.  For

7 example, following the Supreme Court's 2008 decision in *Rowe*, the Second Circuit agreed with the

8 "majority of the circuits" that have construed "service" to "refer[] to the provision or anticipated

9 provision of labor from the airline to its passengers and encompasses matters such as boarding

10 procedures, baggage handling, and food and drink--matters incidental to and distinct from the actual

11 transportation of passengers."  *Air Transport Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir.

12 2008).  Because an automated kiosk, which executes tasks for its user, is unambiguously part of a

13 provision of labor from United to its passengers as well as a boarding procedure,[2] it is plainly a

14 "service of an air carrier," and Plaintiffs' attempt to enforce California law in that area is preempted.

15      Before *Rowe*, the Ninth Circuit had given the term "service" a narrow definition.  In *Charas v.*

16 *Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998) (*en banc*), the court ruled that "services" as

17

18 used in the Airline Deregulation Act refers only "to such things as the frequency and scheduling of

19 transportation, and to the selection of markets to or from which transportation is provided…."  *Id.* at

20 1265-66.  As the Second Circuit recently noted, however, *Charas* is contradicted by the Supreme

21 Court's later decision in *Rowe*, which "necessarily defined 'service' to extend beyond prices,

22

23

---

24     [2]   Numerous lower courts have recognized that boarding procedures, including ticketing, are part of the "services" of an air carrier for Airline Deregulation Act purposes.  *See, e.g., Onoh v. Northwest*

25 *Airlines, Inc.*, 613 F.3d 596, 599-600 (5th Cir. 2010); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003); *Smith v. Comair, Inc.*, 134 F.3d 254, 258-59 (4th Cir. 1998); *Travel All*

26 *Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Seymour v. Continental Airlines, Inc.*, C.A. No. 09-526-ML, 2010 WL 3894027, at *6-*7 (D.R.I. June 11, 2010),

27 *Report and Recommendation adopted by* 2010 WL 3894023 (D.R.I. Oct. 4, 2010) (finding late check-in boarding policy related to airline's "service" and holding plaintiff's Unruh Act and California DPA

28 claims preempted by Airline Deregulation Act).

schedules, origins, and destinations." *Cuomo*, 520 F.3d at 223.  And thus *Charas's* approach—which

several courts of appeals had rejected even before *Rowe, see Branche v. Airtran Airways, Inc.*, 342

F.3d 1248, 1257 (11th Cir. 2003); *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998); *Travel*

*All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Hodges v.*

*Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (*en banc*), is now squarely "inconsistent with

the Supreme Court's recent decision in *Rowe*." *Cuomo*, 520 F.3d at 223.

One Court in this District has already acknowledged in the context of an Airline Deregulation

Act preemption challenge that "the Ninth Circuit's definition of 'service' in *Charas* does conflict

with the Supreme Court's subsequent opinion in *Rowe*...." *Hanni v. American Airlines, Inc.*, No. C

08-00732 CW, 2008 WL 1885794, at *6 (N.D. Cal. Apr. 25, 2008) (citing *Cuomo*, 520 F.3d at 223);[3]

*see also Branche*, 342 F.3d at 1257 (criticizing *Charas* as inconsistent with *Morales*, which mandated

an "extremely broad scope" for Airline Deregulation Act preemption).  Resolving that conflict here in

favor of controlling Supreme Court precedent is sufficient to dismiss this case.  This Court should

follow *Rowe*, which held that federal law bars such "a patchwork of state service-determining laws,

rules, and regulations," 552 U.S. at 373, and find that its broad definition of "service" renders

*Charas's* narrow definition no longer valid.

### 2.     Notwithstanding *Charas*, Plaintiffs' Statutory Claims Seeking to Regulate United's  Kiosks Are Expressly Preempted

In any event, *Charas* itself does not protect Plaintiffs' claims from preemption by the Airline

Deregulation Act.  *Charas* held that "Congress did not intend to preempt passengers' run-of-the-mill

---

[3]     *Hanni* ultimately held that even after *Rowe*, plaintiff's "personal injury claims against airlines" were not preempted, no matter how broadly the term "service" is interpreted.  2008 WL 1885794, at *6.  Plaintiffs' claims here, however, seek to employ state laws to regulate the field of nondiscrimination in air travel, including access to specific technology.  *See* Compl., ¶ 1; Prayer for Relief § A.  The claims do not "involve[] injured passengers seeking compensation for past tortious conduct," as in *Hanni*, but instead seek to create "an affirmative requirement," *Hanni*, 2008 WL 1885794, at *7, to replace its kiosks with others meeting California specifications.

personal injury claims," 160 F.3d at 1261, but that holding is simply not applicable here, where Plaintiffs seek not damages for past torts but the extension of California statutory requirements into the federally regulated field of passenger physical access to interstate commercial air transportation. The issue in this case is not whether United used due care in providing its service, but whether a California statutory scheme can compel United to provide particular in-airport ticketing and boarding procedures that California may deem nondiscriminatory.[4]   *Charas* itself, citing the Supreme Court's decision in *Wolens*, drew a distinction between statutory causes of action and common law claims, *Charas*, 160 F.3d at 1264, and the heart of the Court's ruling was that "personal injury claims are not preempted by the [Airline Deregulation Act]." *Id.* at 1264 n.4 (citing *Wolens*, 513 U.S. at 234 n.9). But crucial to the ruling of the *Wolens* Court was the different treatment accorded to "judge-made duties," which were not preempted, and the "identical rules codified by the state legislature," which were preempted.  513 U.S. at 237 (Stevens, J., concurring in part and dissenting in part ).[5] Especially after *Rowe*, the scope of *Charas* should not be enlarged to exclude from preemption claims alleged under regulatory statutes, such as California's Unruh Act and the DPA – two "rules codified by the state legislature," by which Plaintiffs seek to impose California's antidiscrimination

---

[4]     The present suit is also distinguishable from *Newman v. American Airlines, Inc.*, 176 F.3d 1128 (9th Cir. 1999), which merely extended *Charas* to tort claims that are styled as "discrimination claims," as well as "personal injury tort claims."  *Id.* at 1131 (alleging negligence, negligent infliction of emotional distress and intentional infliction of emotional distress).  The claims found not to be preempted in *Newman* were not statutory and did not attempt to regulate the airlines' practices more generally with respect to nondiscrimination or equal access.

[5]     The Ninth Circuit has twice found nondiscrimination statutes not to be preempted by the Airline Deregulation Act, but only in the employment context, where the direct relationship at issue is between an airline and its *employees* rather than between an airline and its *passengers*, the concern of the Airline Deregulation Act.  In the employment law context, state laws have sometimes been found to affect air carrier services provided to passengers only in a "tenuous, remote, or peripheral ... manner"—and thus insufficiently to trigger preemption.  *Morales*, 504 U.S. at 390 (citation omitted). *See Aloha Islandair, Inc. v. Tseu*, 128 F.3d 1301 (9th Cir. 1997) (rejecting Airline Deregulation Act preemption challenge to enforcement of Hawaii discrimination law against airline for its policy of not hiring monocular pilots); *Air Transp. Ass'n of Am. v. City & Cnty. of San Francisco*, 266 F.3d 1064 (9th Cir. 2001) (finding no Airline Deregulation Act preemption of city ordinance conditioning city contracts, including airport lease agreements, on contractor's promise not to discriminate in the provision of domestic partnership benefits to employees).

standards on United– and this Court should find that, even under *Charas*, Plaintiffs' claims are

preempted.

**D.    Plaintiffs' Complaint Does Not Allege That United's Automated Kiosks Violate Either the Unruh Act or the DPA**

Neither the Unruh Act nor the DPA regulates kiosks as such, or requires that they be made

accessible to blind passengers.  The Unruh Act entitles all persons in California to "full and equal

accommodations … or services in all business  establishments" without regard to disability or other

characteristics.  Cal. Civ. Code § 51.  Similarly, the DPA provides that "[i]ndividuals with disabilities

shall be entitled to full and equal access, as other members of the general public" to the

"accommodations, advantages, facilities … and privileges of all common carriers."  Cal. Civ. Code §

54.1(a)(1).  The Complaint -- although it abundantly alleges that Plaintiffs cannot use the same kiosks

– does not state a valid claim that United has violated these statutory requirements.

Plaintiffs' Complaint is premised on United's alleged failure to alter or replace its existing

kiosks to ensure that they are accessible to the visually impaired.  *See, e.g.*, Compl. ¶ 34 (alleging

violation of the Unruh Act due to United's failure "to take actions to correct access barriers even after

being notified of the discrimination such barriers cause").  No solution short of modifying United's

existing kiosks, such as accommodation of blind passengers by direct assistance from live personnel,

is acceptable to Plaintiffs.  *See id.* ¶¶ 7-9 (alleging that, for all three individual plaintiffs, having a

United employee assist him or her with the check-in process is "undesirable").

This theory does not state a claim under either the Unruh Act or the DPA, because neither

requires identical (as distinct from merely equal) treatment of passengers with disabilities.  Requiring

every business to treat customers with disabilities not merely equally but *identically* in every respect

any customer wishes to challenge (for example, requiring not merely an accessible entrance but that

*all* entrances be accessible) would impose an enormous burden that there is no evidence the

Legislature intended.

Moreover, neither Act requires modification or alteration of United's kiosks.  *See Coronado v. Cobblestone Vill. Cmty. Rentals*, 163 Cal. App. 4th 831, 841, 77 Cal. Rptr. 3d 883, 891 (2008), *overruled on other grounds by Munson v. Del Taco, Inc*, 46 Cal. 4th 661, 678, 208 P.3d 623, 634 (2009)).  On the contrary, Section 51(d) of the Unruh Act states:

> Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure….

Cal. Civ. Code § 51(d).  "Thus, on the question of whether a particular structural modification (such as a wheelchair ramp) is required in a given context, section 51 by its own terms looks to *other* provisions of law."  *Coronado*, 163 Cal. App. 4th at 841, 77 Cal. Rptr. 3d at 891 (emphasis in original).[6]

The only other law that United is alleged to have violated is Section 54.1 of the DPA.  But the DPA also does not mandate any such modification, notwithstanding Plaintiffs' allegations that United's kiosks themselves are subject to the DPA's access requirements.  *See* Compl. ¶ 40.  As the California Department of Justice has recognized, under the DPA, "an establishment is not required to make structural modifications in order to facilitate access by persons with physical disabilities."  California Department of Justice, Legal Rights of Persons with Disabilities (rev. Apr. 2006) at 13 (*available at* http://ag.ca.gov/consumers/pdf/disabled.pdf) (citing *Marsh v. Edwards Theatres Circuit, Inc.*, 64 Cal. App. 3d 881, 134 Cal. Rptr. 844 (1976), *superseded by statute on other grounds as*

---

[6]    The alteration or replacement of United's automated kiosks should be considered a structural modification, as it would require the addition of "an audio interface, a tactile keyboard, and/or interactive screen reader technology for use with touch screens" in order to come into compliance with the Unruh Act, according to Plaintiffs.  Compl. ¶ 23.  But even if it were not, *Coronado's* holding would still apply, as it is based entirely on the text of Section 51(d), which encompasses construction or alteration "structural or *otherwise*" as well as physical modifications "*of any sort whatsoever*."  Cal. Civ. Code § 51(d) (emphases added).

*recognized in Donald v. Sacramento Valley Bank*, 209 Cal. App. 3d 1183, 1188 n.4, 260 Cal. Rptr. 49, 52 n.4 (1989)).[7]

The *Marsh* court held that

> the operator of a business of a type enumerated in Civil Code section 54.1 is not required by the force of that section alone to modify its facilities to allow for their use by handicapped persons. That statute requires only that the operator open its doors on an equal basis to all that can avail themselves of the facilities without violation of other valid laws and regulations.

*Marsh*, 64 Cal. App. 3d at 892, 134 Cal. Rptr. at 850.  *Coronado* reaffirmed *Marsh* thirty-two years later, relying, in part, on the fact that the California "Legislature specifically responded to one aspect of the holding in *Marsh* (that there was no private cause of action for damages) by amending section 54.3 … but left fully intact *Marsh's* fundamental interpretation of the statutory scheme that a structural barrier does not violate sections 54 or 54.1 unless it also violates a separate structural access standard."  163 Cal. App. 4th at 894, 77 Cal. Rptr. 3d at 894; *see also Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1031 (N.D. Cal. 2007) ("when the Legislature amends a statute without altering portions of the provision that have been previously judicially construed, 'the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction.'") (quoting *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1156, 805 P.2d 873, 880, 278 Cal. Rptr. 614, 621 (1991)).

Because no access standards creating affirmative modification requirements of any kind are cited in the Complaint, Plaintiffs have not alleged a violation of Sections 54 or 54.1.  *Id.*  Indeed, the

---

[7]   The California DOJ acknowledged that "other laws which mandate structural modification may apply to these establishments," citing the Americans with Disabilities Act as an example.  *Id.*  But that law explicitly exempts air carriers from its transportation provisions.  *See* 42 U.S.C. § 12141(2); 42 U.S.C. § 12181(10); *Kerner v. Mendez*, No. C-08-04528 EDL, 2009 WL 1226998, at *3 (N.D. Cal. May 1, 2009) ("As an aircraft operator, United is not subject to the [Americans with Disabilities Act].").  Nor, as shown above, do any other federal laws mandate the relief sought by Plaintiffs.  On the contrary, the US DOT has explicitly refused to require such modification.  *See supra* at 4-5.

only other law cited by Plaintiffs – the section of the DPA concerning touch-screens – only further

confirms that no part of the DPA mandates the modification or replacement of United's kiosks.  As

Plaintiffs allege, Section 54.9 of the DPA "requires that manufacturers of touch-screen devices such

as Kiosks offer for availability devices that are accessible to blind individuals."  Compl. ¶ 26 (citing

Cal. Civil Code § 54.9).  The DPA was amended to add this section in 2006, and the original sponsor

of the bill was Plaintiff NFB.  *See* 2006 Cal. Legis. Serv. Ch. 546 (A.B. 768) (Sept. 28, 2006);

California Bill Analysis, 768 Sen. (June 20, 2006).  As Plaintiffs further suggest, initial drafts of the

bill contained "an additional legal obligation to make [touch-screen] kiosks accessible to the blind."

Compl. ¶ 27.  An amendment by the California Senate, however, deleted that requirement, and as

enacted, only *manufacturers* of such devices are covered by the law.[8]   The legislative history of this

amendment demonstrates clearly that the California Legislature did not intend the DPA to mandate

the replacement or modification of automated kiosks to make them accessible to the visually

impaired.  *See, e.g., O.W.L. Found. v. City of Rohnert Park*, 168 Cal. App. 4th 568, 590-91, 86 Cal.

Rptr. 3d 1, 17-18 (2008) ("As a general principle, the Legislature's rejection of specific language

constitutes persuasive evidence a statute should not be interpreted to include the omitted language.")

(quoting *Doe v. Saenz*, 140 Cal. App. 4th 960, 985, 45 Cal. Rptr. 3d 126, 139 (2006)).  Accordingly,

because the DPA, either alone or in concert with the Unruh Act, cannot be interpreted to require the

modification or replacement of automated kiosks, Plaintiffs' claim under the DPA must be dismissed

as well.

---

[8]   According to the bill analysis, the Senate amendments "delete[d] the requirement that facilities that provide passenger transportation services with onsite touch-screen self-service check-in devices ensure that at least one of the devices onsite contains the necessary technology on or after January 1, 2010.  Instead, the amendments required manufacturers to make such touch-screen devices available on or after January 1, 2009."  California Bill Analysis, A.B. 768 Assem. (Aug. 16, 2006).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.     CONCLUSION

For all of the reasons stated above, United respectfully requests the Court to dismiss Plaintiffs' complaint based on (1) preemption under the ACAA and the Airline Deregulation Act, and (2) failure to state a claim, under either the Unruh Act or the DPA, upon which relief can be granted. Further, because the ACAA and the Airline Deregulation Act preempt all claims related to access to automated kiosks by blind passengers, United requests that the motion be granted without leave to amend.

Dated:  December 27, 2010                                      Respectfully submitted,

CODDINGTON, HICKS & DANFORTH

/s/   *Richard G. Grotch*

By:_____

      Richard G. Grotch
      Attorney for Defendant
      United Air Lines, Inc.