IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of its members and itself; and MICHAEL MAY, MICHAEL HINGSON, and CHRISTINA THOMAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | No. C 10-04816 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## INTRODUCTION

In this prospective class action, United Airlines, Inc. moves to dismiss the complaint, advancing two grounds for dismissal: (1) federal preemption and (2) dismissal for failure to state a claim upon which relief can be granted. With the benefit of amicus briefing by the United States, this order finds that the entire complaint is preempted by federal law and thus the motion to dismiss is **GRANTED**.

## STATEMENT

Plaintiffs, the National Federation of the Blind, Michael May, Michael Hingson, and Christina Thomas bring this prospective class action against United Airlines, Inc. The NFB is organized under the laws of the District of Columbia with its principal place of business in


Maryland. Plaintiffs May, Hingson, and Thomas are all citizens of California. United Airlines, Inc. is an Illinois corporation with its principal place of business in Illinois.

Plaintiffs allege that defendant has violated California disability law by failing to make airport ticketing kiosks accessible to the blind. The airport kiosks are allegedly inaccessible to the blind because they use exclusively visual computer screen prompts and touch-screen navigation, without offering a medium accessible to the blind, such as audio output (Compl. ¶¶ 1, 21).

Plaintiffs May, Hingson, and Thomas are blind individuals who fly in and out of various California airports on United Airlines. As they cannot access the airport kiosks, they are allegedly forced to either wait for a United employee to assist them with check-in or to provide sensitive, private information to a sighted stranger who can access the kiosk on plaintiffs' behalf (*id.* at ¶¶ 7–9). As a result, plaintiffs contend that defendant is denying blind patrons full and equal access to the mainstream technology used by most other airline passengers. Plaintiffs bring this class action on behalf of all legally blind individuals in the United States who have flown on United from an airport located in the state of California and been unable to use United's kiosks due to visual disability (*id.* at ¶ 12).

The National Federation of the Blind is a non-profit advocate group for the blind. The majority of its 50,000 members are blind persons, a protected class under California law. The NFB brings this action on behalf of its members and to promote equal access to technology for the blind (*id.* at ¶ 6).

Plaintiffs bring three state-law claims for relief: (1) violation of the Unruh Civil Rights Act, (2) violation of the Disabled Persons Act, and (3) declaratory relief on behalf of the National Federation of the Blind. Defendant now moves to dismiss on the ground that plaintiffs' claims are preempted by federal law under both the Airline Deregulation Act and the Air Carrier Access Act.

Following a February 2011 hearing, the Court issued a request for input on the preemption issues from the United States and the United States Department of Transportation. The United

1 States submitted a statement of interest, for which the Court extends its thanks. The statement
2 found that: (1) plaintiffs' claims were expressly preempted by the Airline Deregulation Act,
3 (2) plaintiffs' claims were field preempted by the ACAA, and (3) plaintiffs' claims were conflict
4 preempted by the ACAA (Dkt. No. 45).

5 Regarding Airline Deregulation Act preemption, the United States submitted that the
6 kiosks constituted a "service" within the meaning of the preemption provision and that a recent
7 United States Supreme Court ruling undermined a previous court of appeals decision on which
8 plaintiffs rely (*id.* at 13). Regarding ACAA preemption, the United States argued that DOT's
9 regulations were "not only pervasive but also encompass plaintiff's claims in this present case"
10 and that the remedy sought by plaintiffs would "undermine the purpose behind DOT regulations"
11 (*id.* at 7). This order agrees with these views in finding express preemption under the Airline
12 Deregulation Act and field preemption under the Air Carrier Access Act. Because the following
13 findings render the issue moot, this order does not decide whether plaintiffs' claims are conflict
14 preempted.

**ANALYSIS**

16 To survive a motion to dismiss, a complaint must contain sufficient factual matter,
17 accepted as true, to state a claim to relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v.*
18 *Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual
19 allegations to draw a reasonable inference that a defendant is liable for the misconduct alleged.
20 While a court "must take all of the factual allegations in the complaint as true," it is "not bound to
21 accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell*
22 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and
23 unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."
24 *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

**A. AIR CARRIER ACCESS ACT PREEMPTION**

26 Plaintiffs allege that United has systematically violated the Unruh Civil Rights Act by
27 failing to provide accessible airport kiosks. Unruh states that disabled people are "entitled to the
28 full and equal accommodations, advantages, facilities, privileges, or services in all business

3

establishments of every kind whatsoever." CAL. CIV. CODE 51(b). Plaintiffs are legally blind and thus recognized as disabled people under Unruh.

Additionally, plaintiffs contend that United has violated the Disabled Persons Act, which guarantees full and equal access to disabled persons to all accommodations, advantages, facilities, and privileges of all common carriers, airplanes, or any other public conveyances or modes of transportation (whether private or public) and in all places of public accommodation. CAL. CIV. CODE 54.1(a)(1).

Interstate air travel in the United States is regulated by the Federal Aviation Act of 1958, recodified as Title 49 of the United States Code. In 1986, Congress amended the FAA to add the Air Carrier Access Act which prohibits discrimination against disabled people in air travel. The ACAA states: "In providing air transportation, an air carrier . . . may not discriminate against an . . . individual [that] has a physical or mental impairment." 49 U.S.C. 41705(a)(1). The ACAA is implemented through federal regulations promulgated by the United States Department of Transportation.

Defendant argues that plaintiffs' claims are field preempted by the ACAA. Field preemption arises where the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 508 (1996) (citations omitted). Plaintiffs argue that their claims are not field preempted by the ACAA (Opp. 14). Yet, the DOT regulations specifically address the issue of automated kiosks:

> As a carrier, if your automated kiosks in airport terminals cannot readily be used by a passenger with a disability for such functions as ticketing and obtaining boarding passes that the kiosks make available to other passengers, you must provide equivalent service to the passenger (e.g., by assistance from your personnel in using the kiosk or allowing the passenger to come to the front of the line at the check-in counter).

14 C.F.R. 382.57. This regulation effectively states that as long as disabled passengers are accorded *equivalent* service, they need not be given *identical* access to ticketing kiosks.

Plaintiffs reply that Section 382.57 is merely an "interim measure" and that the DOT has not explicitly rejected an airport kiosk-accessibility requirement (Opp. 15). Not so. In 2008, the DOT considered and ultimately rejected a proposal that would have required fully accessible

4

airport kiosks due to "cost and technical issues." Nondiscrimination on the Basis of Disability in Air Travel, 73 Fed. Reg. 27614, 27619 (May 13, 2008). The DOT has stated that it will further consider the kiosk issue in the future and that the regulation may be subject to change at that time. This does not, however, negate the force of Section 382.57 as it now stands. While the DOT reserves the right to revisit this issue in the future, it has not yet done so. Thus, Section 382.57 is the current law on this issue.

The DOT has clearly expressed an intent for its regulations to have preemptive effect. The stated purpose of Section 382 is "to carry out the Air Carrier Access Act of 1986." 14 C.F.R. 382.1. The DOT has stated that the ACAA is "a detailed, comprehensive, national regulation, based on Federal statute, that substantially, if not completely, occupies the field of nondiscrimination on the basis of handicap in air travel." Nondiscrimination on the Basis of Handicap in Air Travel, 55 Fed. Reg. 8008, 8014 (Mar. 6, 1990). While this statement is not controlling, it offers clear evidence of the DOT's intent to occupy the field. As congressional intent lies at the crux of preemption analysis, this evidence is persuasive.

In the same comment, the DOT stated that "interested parties should be on notice that there is a strong likelihood that state action on matters covered by this rule will be regarded as preempted." Plaintiffs argue that because the DOT comment did not interpret an ambiguous regulation, it is not controlling, citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Even assuming this is true, plaintiffs concede that it can be accorded a "measure of respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944). *Skidmore* held that where an administrative agency ruling was not controlling, its weight depended upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." There is nothing in the record to suggest, and plaintiffs do not argue, that the DOT comment was inconsistent, invalid, or incomplete in any way. Moreover, plaintiffs do not present a compelling reason to ignore the DOT's stated intent. This order finds the DOT comment to be persuasive.

State regulation of air travel is preempted in areas "pervasively regulated" under the FAA. Absent "pervasive" federal regulation, however, state laws apply. *Martin ex rel. Heckman v.*

5

*Midwest Express Holdings, Inc.*, 555 F.3d 806, 812 (9th Cir. 2009). Plaintiffs argue that the ACAA regulations do not pervasively regulate airport kiosks because the regulations do not say whether kiosks must be made available (Opp. 16). This argument fails, however, because the regulations provide examples of what services airlines must offer in the event that kiosks are not accessible. Section 382.57 expressly proposes that where airport kiosks are not accessible, airlines must at least offer assistance from personnel in using the kiosk or allow the passenger to come to the front of the line at the airport. This suggested protocol clearly demonstrates that the regulations authorize and tolerate nonaccessible kiosks so long as equivalent service is otherwise available.

This proposed modus operandi also appears in the same DOT comment that rejected the proposal to require fully accessible airport kiosks. The comment states: "If, because the kiosk is not accessible, the passenger cannot use it, the carrier would have to provide equivalent service, *such as by having carrier personnel operate the kiosk for the passenger or allowing the passenger to use the first class boarding pass line*." 73 Fed. Reg. at 27619 (emphasis added). Again, the DOT unequivocally calls for carriers to provide equivalent service where kiosks are inaccessible. The federal regulations, unlike the California laws under which plaintiffs seek relief, call for equivalent, not identical, treatment.

Plaintiffs compare the regulation of kiosks to the regulation of airstairs in *Martin*, which held that the FAA did not preempt the personal injury claim of a pregnant passenger who fell down a flight of airstairs that lacked handrails. There, however, "the regulations ha[d] nothing to say about handrails, or even stairs at all, except in emergency landings." *Martin*, 555 F.3d at 812. In fact, the instant action is more like *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007). *Montalvo* found that a group of passengers who developed deep-vein thrombosis while on flights were preempted from bringing a failure-to-warn claim because the FAA had issued "a number of specific federal regulations govern[ing] the warnings and instructions which must be given to airline passengers." *Id.* at 472–73. Because the DOT has pervasively regulated airport kiosk accessibility, plaintiffs' claims are field preempted by the ACAA.

6

### B. AIRLINE DEREGULATION ACT PREEMPTION

In 1978, the Federal Aviation Act of 1958 was amended to add the Airline Deregulation Act which removed government control over fares, routes, and market entry. The Airline Deregulation Act provided that a state may not enact or enforce a law "related to a price, route, or service of an air carrier." 49 U.S.C. 41713(b)(1). The term "related to" is to be broadly interpreted to preempt all state-law actions having "a connection with or reference to airline rates, routes, or services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (internal quotation marks omitted).

Defendant argues that plaintiffs' claims are expressly preempted by the Airline Deregulation Act. Plaintiffs argue that their claims are not within the scope of the Act because automated kiosks are not a "service" within the meaning of the Act (Opp. 5). As the Airline Deregulation Act did not define the term "service," plaintiffs rely on our court of appeals' narrow definition of "service" set forth in *Charas v. Trans World Airlines*, *Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998) (en banc). *Charas* held that "service" refers to such things as "the frequency and scheduling of transportation, and [] the selection of markets to or from which transportation is provided" and does not include "dispensing of food and drinks, flight attendant assistance, or the like." *Id.* at 1265–66. Thus, the decision found that the Airline Deregulation Act did not preempt passengers' run-of-the-mill personal injury claims which did not affect deregulation. The *Charas* definition of "service," however, is called into question by the subsequent Supreme Court holding in *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364, 378 (2008).

While *Charas* defined "service" narrowly, *Rowe* put forth a more expansive view. *Rowe* interpreted the scope of a parallel preemption provision in a statute modeled after the Airline Deregulation Act that related to the deregulation of trucking. The decision found that federal law preempted a state law requiring tobacco retailers to use only a delivery service that provided a recipient verification service. The goal of the law was to ensure that tobacco was not being delivered to minors. The decision held that the state statute was preempted. Despite the fact that the law was aimed at tobacco retailers, not truckers, *Rowe* reasoned that the law related to motor carrier service because it would require carriers "to offer tobacco delivery services that differ

7

significantly from those that, in the absence of the regulation, the market might dictate." *Id.* at 372. Contrary to plaintiffs' arguments, *Rowe* "necessarily define[s]'service' to extend beyond prices, schedules, origins, and destinations." *Hanni v. Am. Airlines*, *Inc.*, No. C 08-00732 CW, 2008 WL 1885794, at *6 (N.D. Cal. Apr. 25, 2008) (Wilken, J.) (citation omitted).

By plaintiffs' own admission, the airport kiosks assist passengers in accessing information about flights, checking in for flights, printing tickets and boarding passes, selecting seats, upgrading to business or first class cabins, checking baggage, and performing other transactions relevant to air travel plans (Compl. ¶ 20). Because the kiosks plainly facilitate a number of different services that relate to air transportation, this order is duty bound to follow *Rowe* and to reject the *Charas* definition of "service." The automated kiosks provide "service" within the meaning of Section 41713(b)(1).

For this reason, subsequent decisions relying on *Charas* are not persuasive. *See Newman v. Am. Airlines, Inc.*, 176 F.3d 1128, 1131 (9th Cir. 1999)*; see also Duncan v. Nw. Airlines*, *Inc.*, 208 F.3d 1112, 1114 (9th Cir. 2000).

*Rowe* stated that interpreting the federal law to permit these state requirements could easily lead to a "patchwork of state service-determining laws, rules, and regulations. That state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." 552 U.S. at 373.

Plaintiffs contend that Unruh and the DPA should not be preempted because they are "statutes of general application" that apply to all businesses, not just air carriers (Opp. 11). True, in *Rowe*, the state laws at issue were not general. 552 U.S. at 375. It does not follow, however, that general state laws cannot be preempted by the Airline Deregulation Act. Rather, the specificity of the state law was one of many factors the Court considered in concluding that the state law was preempted. Plaintiffs offer no further support for their contention. Thus, plaintiffs' argument must fail.

Even if *Charas* was not effectively overruled on this point, it would not mandate the outcome plaintiffs seek. *Charas* involved common law claims. *Charas* does not compel this

8

order to permit a state statute to interfere in a field traditionally regulated by Congress. *Charas* does not, therefore, contradict this order's holding that plaintiffs' claims are preempted.

Plaintiffs argue that even if the airport kiosks are "service," the California laws affect airline fares "in too tenuous, remote or peripheral a manner to have preemptive effect" (Opp. 10 (citing *Morales,* 504 U.S. at 390)). Relying on *Air Transportation Association of America v. City & County of San Francisco*, 266 F.3d 1064, 1074 (9th Cir. 2001), plaintiffs argue that because, at most, United would have to replace the inaccessible airport kiosks with accessible ones and because the cost of doing so would be minimal to United, there would only be a tenuous affect on fares. Yet, there is no language in the *Air Transportation Association* decision that requires United to prove that the cost of replacing the kiosks would be burdensome.

Plaintiffs argue that state statutory anti-discrimination claims are not preempted by the Airline Deregulation Act under *Aloha Islandair, Inc. v. Tseu*, 128 F.3d 1301, 1302 (9th Cir. 1997). There, a monocular pilot filed a complaint with the Hawaii Civil Rights Commission against Islandair for its policy of not hiring monocular pilots. Islandair asserted that the Commission could not proceed with its investigation due to the preemptive effect of the Airline Deregulation Act. The decision held that the investigation could go forward because the connection between the state-law employment discrimination claim and the airline's services was too tenuous, remote, and peripheral for the claim to be preempted by the Airline Deregulation Act. *Id.* at 1303. The decision, however, did not announce a rule that state anti-discrimination claims cannot be preempted by the Airline Deregulation Act. Moreover, it is distinguishable because it dealt with employment discrimination which has a more tenuous relationship to airline services.

Recently, our court of appeals held that the Airline Deregulation Act preempted state laws that sought to regulate surcharges imposed by foreign air carriers. *In re Korean Air Lines Co., Ltd., Antitrust Litig.*, No. 08-56385, 2011 WL 1458794, at *3 (9th Cir. Apr. 18, 2011). While the decision did not deal directly with the definition of service, it acknowledged that *Rowe* "reiterated that a state law 'having a connection with, or reference to' rates, routes, or services is preempted."

9

*Id.* at *8 (citation and italics omitted). Because the state law at issue in our case has a connection with service, plaintiffs' claims are expressly preempted by the Airline Deregulation Act.

### C. FAA SAVINGS CLAUSE AND THE PRESUMPTION AGAINST PREEMPTION

Plaintiffs argue that any claims not expressly preempted are preserved by the savings clause of the Federal Aviation Act (Opp. 13). The savings clause provides that "a remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. 40120(c). Plaintiffs state that the savings clause should be read as a limitation on preemption, as in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995). True, that decision did read the preemption clause together with the FAA's savings clause. *Wolens*, did not, however, hold that the savings clause *must* be read in concert with the preemption provision. Additionally, *Wolens* "adhere[d] to [the] holding in *Morales*." *Id.* at 234. *Morales* held that "[a] general 'remedies' saving clause cannot be allowed to supersede [a] specific substantive pre-emption provision." 504 U.S. at 385.

Furthermore, *Wolens* is distinguishable. There, the plaintiffs brought a common law contract claim, not a state statutory claim. *Wolens* preserved a fundamental common law right of action; it did not allow a state statute to interfere in a field traditionally regulated by Congress.

Plaintiffs argue that the Airline Deregulation Act was not meant to target discrimination, but rather airline deregulation, and that the Act should therefore not preempt discrimination claims (Opp. 12). The Airline Deregulation Act unequivocally declares that no state may enact a law related to airline service. Congress could have drawn the preemption provision more narrowly; it did not. The provision does not except discrimination claims from its scope. Thus, this argument must fail.

Plaintiffs also rely on *Charas* and *Newman* but, again, those decisions are not controlling following *Rowe*. Plaintiffs' claims are preempted by the Airline Deregulation Act.

Plaintiffs argue that anti-discrimination statutes are "not only classic examples of states exercising their police powers, but they are also a field traditionally occupied by the states" (Opp. 3). The historic police powers of states are not to be superseded by federal act, unless that is the clear and manifest purpose of Congress. *Medtronic*, 518 U.S. at 471. The presumption, however, does not apply in a field that "has long been 'reserved for federal regulation.'" *Wyeth v. Levine*,

10

129 S.Ct. 1187, 1229 n.14 (2009) (citations omitted). The area of discrimination in air transportation is such a field. Prior to the enactment of the ACAA, the Federal Aviation Act of 1958 prohibited carriers from practicing discrimination or prejudice in any respect under former Section 404(b). *See U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986). This area has, therefore, "long been reserved for federal regulation." The presumption against preemption, therefore, does not apply in the instant action. Thus, neither the FAA savings clause nor the presumption against preemption undermine this order's holdings.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Accordingly, all subsequently-filed motions are **DENIED AS MOOT**. Plaintiffs' claims are preempted by both the ACAA and the Airline Deregulation Act. As such, there is no need to consider whether plaintiffs' complaint states a claim upon which relief can be granted. Because the findings of preemption render amendment futile, the complaint is dismissed without leave to amend. The Court thanks all counsel for their excellent briefing. This important question is now ready for appellate review.

**IT IS SO ORDERED.**

Dated: April 25, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11